# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 16-1681V
Filed: March 13, 2019

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| DAVID V. BOGDAN, *Administrator of* | * | UNPUBLISHED |
| *the Estate of* MICHAEL GRANT, | * | |
| *Deceased*, | * | |
| | * | |
| Petitioner, | * | |
| v. | * | Decision on Attorneys' Fees and Costs; |
| | * | Reasonable Basis; Estate Administrator; |
| SECRETARY OF HEALTH | * | Hourly Rate |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

*Ying Zhou, Esq.*, Law Office of Ying Zhou, Philadelphia, PA, for petitioner.
*Christine Becer, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On December 22, 2016, David Bogdan ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program as administrator and on behalf of the estate of Michael Grant, deceased.[2] Petitioner alleged that Mr. Grant developed Guillain-Barre syndrome ("GBS"), and subsequently died on April 9, 2016, as a result of receiving an influenza vaccination on December 31, 2013. *See* Petition at 3, ECF No. 1. On June 6, 2018, the parties filed a Joint Stipulation of Dismissal. *See* ECF No. 38. An order concluding proceedings was issued the same day. *See* Order, ECF No. 39.

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

Pursuant to Section 15(e) of the Vaccine Act, petitioner's counsel now seeks an award of attorneys' fees and costs in the following amounts: $23,940.00 in attorneys' fees for Ms. Zhou, $4,101.44 in litigation costs incurred by Ms. Zhou, and $7,530.00 in attorneys' fees and costs for Mr. Bogdan, the administrator of Mr. Grant's estate and the named petitioner in this matter. Motion for Attorneys' Fees and Costs ("Motion for Fees") at 3-4, ECF No. 40. After careful consideration, **the request is granted in part** for the reasons set forth below.

## I. Facts

Mr. Grant was born on August 15, 1953. He had a history of high blood pressure, diabetes, arthritis, allergies, sarcoidosis, and back pain. *See generally* Petitioner's Exhibit ("Pet. Ex.") 1. On December 31, 2013, Mr. Grant received a flu vaccination at the office of his primary care physician, Dr. Donald Fox. Petition at 1.

On January 15, 2014, Mr. Grant presented to an orthopedist with complaints of back pain, weakness in both legs, constipation, infrequent urination, decreased appetite, and numbness in his hands. Pet. Ex. 1 at 13-14. Mr. Grant reported onset of symptoms two weeks prior to this visit. *Id.* Mr. Grant was referred to the Crozer Chester Medical Center ("Crozer") emergency department ("ED") for evaluation of cauda equine syndrome. *Id.* at 14. Upon presentation to the Crozer ED, Mr. Grant reiterated that his symptoms had begun two weeks prior to the visit. Pet. Ex. 3 at 19. Mr. Grant was noted to be in acute renal failure when admitted to the ED but recovered by the time he was discharged on January 22, 2014. Pet. Ex. 1 at 37. Mr. Grant was ultimately diagnosed with spinal stenosis, lower extremity weakness secondary to plexopathy, acute renal failure, urinary retention, chronic lower back pain, gout, and hypertension. Pet. Ex. 3 at 4, 16-17, 21.

On January 25, 2014, Mr. Grant presented to Mercy Fitzgerald Hospital with complaints of acute shortness of breath. Pet. Ex. 2 at 46. Upon presentation, Mr. Grant reported progressive weakness in his bilateral lower extremities three to four weeks after receiving a flu vaccine. *Id.* at 47. He was diagnosed with an acute pulmonary embolism, possible neuromuscular disease or GBS, diabetes, hypertension, and hyperlipidemia. *Id.* A CT angiogram revealed extensive bilateral pulmonary emboli. *Id.*

On January 29, 2014, Mr. Grant was transferred to Jefferson Hospital for progressive weakness and suspicion of GBS. *Id.* at 40-46. An EMG was suggestive of neuropathy with demyelinating features. Lumbar puncture showed increased cell protein. Pet. Ex. 4 at 56. An MRI showed enhanced dorsal nerve roots, which was suggestive of inflammatory polyneuropathy, GBS, viral etiologies, or sarcoidosis. *Id.* Mr. Grant's additional differential diagnoses included severe sepsis, diabetes, and pneumonia. Pet. Ex. 1 at 21-23. Mr. Grant remained in the hospital until February 26, 2014. *Id.* at 18-29. An infectious disease consultation on February 17, 2014, revealed pleocytosis[3] in the cerebrospinal fluid ("CSF"), which is atypical in GBS. Pet. Ex. 4 at 31-33. Mr. Grant's cause of illness was unknown, with infectious and non-infectious etiologies. *Id.*

---

[3] Pleocytosis is defined as "presence of a greater than normal number of cells in the cerebrospinal fluid. *Pleocytosis*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1460 (32d ed. 2012) [hereinafter DORLAND'S].

2

Mr. Grant was treated at Penn Medicine on March 24-29, 2014. *See* Pet. Ex. 11 at 17-20, 161. A repeat lumbar puncture showed resolution of his pleocytosis. *Id.* at 161. Because of this change, it was noted that Mr. Grant likely had a viral illness that was responsible for his neurological disease and initial elevated white blood cell count in the CSF. *Id.* at 19. The record also indicated that this result was inconsistent with GBS and that substantial improvement was unlikely. *Id.*

Two years later, on February 14, 2016, Mr. Grant presented to the Lankenau Hospital Emergency Department, experiencing severe respiratory distress and tachypnea. Pet. Ex. 6 at 17-27. He was diagnosed with possible septic shock and aspiration pneumonia. *Id.* at 4. An infectious disease consultant noted early sepsis syndrome with ventilator dependent respiratory failure. *Id.* CT scans confirmed multifocal pneumonia. *Id.* at 14-15, 84-85. He was treated with IV antibiotics. *Id.* Mr. Grant remained on a respirator until April 9, 2016, when he passed away. *Id.* at 201. Mr. Grant's death certificate states that his cause of death was anoxic encephalopathy[4] related to cardiac arrest. *See* Pet. Ex. 8.

## II. Procedural History

On December 22, 2016, petitioner filed the petition and Mr. Grant's medical records and death certificate. Petition, Pet. Ex. 1-9, ECF No. 1. This case was originally assigned to Chief Special Master Dorsey but was later transferred to me on December 12, 2017. *See* ECF Nos. 4, 33.

On February 15, 2017, an initial status conference was held, after which respondent was ordered to file a status report advising how he intended to proceed by May 15, 2017. Order at 1, ECF No. 8. On May 16, 2017, respondent filed a status report ("Resp. S.R.") requesting an additional thirty days to file a status report advising how he intended to proceed. Resp. S.R. at 1, ECF No. 9. Chief Special Master Dorsey granted respondent's request for an extension of time and ordered respondent to file a status report by June 14, 2017. Order at 1, ECF No. 10.

On June 14, 2017, respondent filed a status report identifying several missing records needed to complete his review of the case. Resp. S.R. at 1, ECF No. 11. Petitioner was ordered to file the requested medical records and an Amended Statement of Completion by July 19, 2017. Order at 1, ECF No. 12. On July 16, 2017, petitioner filed additional medical records (Pet. Ex. 10) and a status report requesting an additional 60 days to obtain the outstanding records. Pet. S.R. at 1, ECF No. 14. Chief Special Master Dorsey ordered petitioner to file additional records and an amended Statement of Completion by September 15, 2017. Order at 1, ECF No. 15.

On August 10, 2017, petitioner filed updated medical records (Pet. Exs. 9(a)-12), an amended Statement of Completion (ECF No. 19), and a status report ("Pet. S.R.") advising that he had made a good faith effort to obtain all requested medical records, even though a handful of records remained outstanding. Pet. S.R. at 1, ECF No. 18.

---

[4] Anoxic encephalopathy is defined as "hypoxic degenerative disease of the brain." *Anoxic encephalopathy*, DORLAND'S at 614.

A status conference was held on August 18, 2017, after which petitioner was ordered to file the discussed insurance records by August 25, 2017, and respondent was ordered to file a status report by September 26, 2017, indicating how he intended to proceed and whether he was willing to engage in settlement discussions. Order at 1, ECF No. 20. Petitioner filed the requested insurance documentation the same day. Pet. Ex. 13, ECF No. 21.

On August 24, 2017, respondent's counsel contacted petitioner's counsel and Chief Special Master Dorsey's chambers and advised that her client reviewed the insurance documentation submitted by petitioner and requested additional vaccination documentation. Informal Communication, dated August 24, 2017. Petitioner filed the additional vaccine documentation and insurance records, along with an amended Statement of Completion, on September 14, 2017. Pet. Exs. 1(a), 8(a), ECF Nos. 27-29.

On October 16, 2017, respondent filed a status report requesting 45 days to file his Rule 4(c) Report. Resp. S.R. at 1, ECF No. 30. Respondent's Rule 4(c) Report deadline was set for December 4, 2017. Order at 1, ECF No. 31. On December 4, 2017, respondent filed his Rule 4(c) Report ("Resp. Report") in which he noted several issues with this case, including lack of a definitive diagnosis and issues with petitioner's reported onset. Resp. Report at 5, ECF No. 32.

This case was reassigned to me on December 12, 2017. *See* ECF No. 34. A status conference was held on February 14, 2018, during which petitioner's counsel advised that she intended to file a motion for interim costs as she is a solo practitioner with limited resources to fund costs in this case. Order at 1, ECF No. 35. Respondent's counsel noted her opposition to an award of interim costs at this early stage of litigation and advised her client would likely oppose the motion as well. *Id.* Petitioner was ordered to file either a motion for interim fees and costs or a status report indicating how he intended to proceed by April 2, 2018. *Id.*

On March 4, 2018, petitioner's counsel filed a status report ("Pet. S.R.") advising that she was able to obtain an expert to author a report and would no longer need to file a motion for interim fees and costs. Pet. S.R. at 1, ECF No. 36. Accordingly, petitioner was ordered to file an expert report by June 4, 2018. Non-PDF Order, dated March 5, 2018. Petitioner filed an expert report authored by Dr. Ron Shatzmiller on June 2, 2018. Pet. Exs. 14-15, ECF No. 37. In this report, Dr. Shatzmiller acknowledged that petitioner developed GBS-like symptoms after receipt of a flu vaccine and "it [was] reasonable to suspect that the cause of [Mr. Grant's] illness was GBS induced by an influenza vaccine." Pet. Ex. 14 at 1. But, ultimately, Mr. Grant's GBS-like symptoms were suspected to be viral related based on the pleocytosis found in the CSF. *See* Pet. Ex. 11 at 19.

On June 6, 2018, respondent filed a Joint Stipulation of Dismissal (ECF No. 38), and an order concluding proceedings pursuant to Vaccine Rule 21(a) was issued the same day. *See* Order, ECF No. 39.

On August 30, 2018, petitioner filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 40. Petitioner requests attorneys' fees in the amount of $23,940.00 in attorneys' fees for Ms. Zhou, $4,101.44 in litigation costs incurred by Ms. Zhou, and $7,530.00 in attorneys' fees and costs for Mr. Bogdan, the petitioner in this case. Motion for Fees at 3-4.

4

On September 13, 2018, respondent filed a response to petitioners' Motion for Fees, submitting that, "absent any objective evidence that Mr. Grant's flu vaccine caused him to develop GBS, petitioner has failed to establish a reasonable basis for the claim set forth in the petition . . ." Response at 4, ECF No. 41.

Petitioner filed a reply on September 20, 2018, arguing that, while this was a very difficult and complex case, the proximate temporal relationship between the flu vaccine and onset of petitioner's symptoms constituted sufficient proof of vaccination so as satisfy the reasonable basis requirement. Reply at 8-9, ECF No. 42. Petitioner further noted that he quickly withdrew his claim and voluntarily exited the Program upon the issuance of the expert report unsupportive of entitlement for compensation. *Id.* at 10.

This matter is now ripe for decision.

### III. Applicable Law and Analysis

**A.     Good Faith and Reasonable Basis**

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, petitioner's counsel is entitled to a reasonable attorneys' fee award. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award so long as the petition was brought in "good faith" supported by "reasonable basis." § 15(e)(1).

Inquiry into whether counsel brought a claim in good faith is a subjective inquiry that questions whether the attorney exercised adept professional judgment in determining whether a petitioner may be entitled to compensation. *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014) (citations omitted). Here, respondent did not question petitioner's counsel's subjective good faith in bringing the claim. Therefore, petitioner's good faith requires no further analysis.

Reasonable basis is an objective standard determined by evaluating the sufficiency of the medical records in petitioner's possession at the time the claim is filed. "Special masters have historically been quite generous in finding reasonable basis for petitions." *Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). However, the Federal Circuit recently denied an award of attorney's fees based on petitioner's lack of reasonable basis in *Simmons v. Secretary of Health and Human Services*. 875 F.3d 632, 636 (Fed. Cir. 2017). In *Simmons*, the Federal Circuit determined that petitioner lacked reasonable basis for filing a claim when, at the time of filing: (1) petitioner's counsel failed to file proof of vaccination, (2) there was no evidence of a diagnosis or persistent injury allegedly related to a vaccine in petitioner's medical records, and (3) the petitioner had disappeared for approximately two years prior to the filing of the petition and only resurfaced shortly before the statute of limitations deadline on his claim expired. *See id.* at 634-35. The Federal Circuit specifically stated that the reasonable basis inquiry is objective and unrelated to counsel's conduct prior to filing a claim. The Court consequently affirmed the lower court's holding that petitioner's counsel lacked reasonable basis in filing this claim based on the insufficiency of petitioner's medical records and proof of vaccination at the time the petition was filed. *Id.* at 636.

In light of *Simmons*, the Court of Federal Claims determined, "[I]n deciding reasonable basis[,] the Special Master needs to focus on the requirements for the petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery. . . Under the objective standard articulated in *Simmons*, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). When evaluating a case's reasonable basis, petitioner's "burden [in demonstrating reasonable basis] has been satisfied . . . where a petitioner has submitted a sworn statement, medical records, and [a] VAERS report which show that recovery is feasible." *Id.* Moreover, the special master may consider various objective factors including "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).

In this case, respondent cursorily argued that the petition lacked reasonable basis, arguing that "the instant claim never possessed a reasonable basis, since petitioner has provided no evidence to satisfy the Act's objective reasonable basis standard." Response at 4. Respondent further submitted that "absent any objective evidence that Mr. Grant's flu vaccine caused him to develop GBS, petitioner has failed to establish a reasonable basis for the claim set forth in the petition, and he is not eligible for an award of attorneys' fees and costs." *Id*.

Petitioner's counsel argued that she had satisfied the reasonable basis standard under the *Chuisano* "totality of circumstances" test. Reply at 7. Petitioner based this assertion on (1) the fact that the administration of the seasonal influenza vaccine with subsequent onset of GBS within 3 to 42 days became a covered Vaccine Injury Table three months after the filing of Mr. Grant's petition; (2) the temporal proximity between the administration of the flu vaccine and the reported onset of GBS-like symptoms; and (3) respondent's misplaced reliance on selective portions of Dr. Shatzmiller's report as evidence that petitioner's application for fees and costs was not supported. *Id.*

I agree with petitioner that this claim was supported by reasonable basis when it was filed. In *Simmons*, the Federal Circuit determined that a special master may objectively consider the evidence provided by petitioner in deciding whether a claim was supported by reasonable basis when it was filed. 875 F.3d at 636. While the Federal Circuit determined that there was no reasonable basis in *Simmons*, petitioner's counsel in that case conducted next to no inquiry into the merits of the claim before filing the petition. *See id.* Moreover, there was no objective evidence in medical records referenced or filed that demonstrated the feasibility of petitioner's claim. *See id.*

When this case was filed, multiple physicians throughout the medical records attributed petitioner's GBS-like symptoms to the flu vaccine petitioner received on December 31, 2013. Pet. Ex. 2 at 46; Pet. Ex. 4 at 56. Though causation and onset may have ultimately been an impediment to petitioner's ability to prove entitlement,[5] petitioner's symptoms fit into the established

---

[5] Petitioner did not file the records in which GBS was ruled out as a diagnosis until approximately 8 months after filing the petition. *See* Pet. Ex. 11 at 19 (filed on August 10, 2017, ECF No. 17). Accordingly, this information strengthens petitioner's claim that reasonable basis existed at the time the petition was filed.

timeframe for onset of GBS, 3 to 42 days. *See Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) ("[T]he 'reasonable basis' requirement is objective, looking not at the likelihood of success but more to the feasibility of the claim."). At petitioner's January 15, 2014 visit with Dr. Fox, he placed onset of his symptoms approximately two weeks prior to the visit, at the beginning of January 2014. Pet. Ex. 1 at 13-14. On January 25, 2014, petitioner reported his symptoms began three to four weeks after receiving the flu vaccine. Pet. Ex. 2 at 47. While these dates of onset are inconsistent, petitioner was correct in his brief that the reasonable basis inquiry required by *Chuisano* is less onerous than the preponderance of the evidence standard. Reply at 7, 9 (citing *Chuisano v. United States*, 116 Fed. Cl. at 285). Moreover, petitioner met his reasonable basis burden by providing objective evidence in the form of medical records to support his claim. 875 F.3d at 636;[6] *Santacroce*, 2018 WL 405121 at *7. Thus, when Mr. Grant's petition was filed, an objective reasonable basis supported petitioner's claim.

Even though the strength of petitioner's case may have diminished, petitioner's claim remained supported by reasonable basis for the pendency of this matter. In his Rule 4(c) Report, respondent noted several issues with petitioner's case including the lack of a definitive GBS diagnosis and inconsistent accounts regarding the onset of petitioner's symptoms. Resp. Report at 5. Petitioner retained an expert in this matter, Dr. Shatzmiller, who concluded that what first appeared to be a form of GBS associated with the flu vaccination turned out to be a suspected infection that caused his neurological condition. Pet. Ex. 14 at 1-2. However, petitioner's expert opined that this case initially had a reasonable basis to conclude that petitioner had suffered GBS following his flu vaccine. *Id.* at 1 ("[I]t [was] reasonable to suspect that the cause of [Mr. Grant's] illness was GBS induced by the influenza vaccine."). The nine-month period during which respondent reviewed this case and requested additional medical records, insurance records, and vaccination records before he determined that this case was not compensable is particularly notable. Respondent's requests during this time period demonstrate how difficult the medical issues in this case were and highlight the complexity in determining what caused petitioner's neurological problems. Petitioner's original filing, therefore, appeared reasonable to respondent for the first nine months after the filing of the petition.

Moreover, petitioner's counsel was expedient in dismissing this case once it became clear that petitioner could not satisfy his burden of proof. Within two days of filing Dr. Shatzmiller's unfavorable expert report, petitioner's counsel coordinated with respondent to file a Joint Stipulation for Dismissal dismissing this matter. Stipulation, ECF No. 38.

Ultimately, petitioner provided concrete medical records demonstrating the possibility of a GBS diagnosis associated with petitioner's receipt of a flu vaccine, even though this theory was later disproven. Petitioner's expediency in dismissing this case, coupled with the medical records and temporal relationship between the vaccine and onset of petitioner's symptoms support petitioner's assertion that there was reasonable basis for the duration of this matter. The filing of this claim was based on more than unsupported speculation and was dismissed as soon as it became

---

[6] Because I find reasonable basis in the medical records, I do not reach the issue discussed in *Simmons* regarding the interplay between counsel's conduct and the statute of limitations. *See Simmons*, 875 F.3d at 636.

7

clear to petitioner's counsel that Mr. Grant's claim could not be proven. Thus, I find that reasonable basis existed for the entire duration of this matter.

**B.     Evaluation of Requested Attorneys' Fees and Costs**

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

**1. Reasonable Hourly Rate**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id*. This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Ms. Zhou practices in Philadelphia, PA. Motion for Fees at 2. Special masters have consistently awarded forum rates to attorneys who practice in Philadelphia, so forum rates will be awarded in this case. *See D.B. v. Sec'y of Health & Human Servs.*, No. 11-513, 2018 WL 3029339, at \*3 (Fed. Cl. Spec. Mstr. May 23, 2018); *Vanderpoel v. Sec'y of Health & Human Servs.*, No. 15-899V, 2017 WL 2534327, at \*2 (Fed. Cl. Spec. Mstr. May 16, 2017).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at \*19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years. Attorneys with 11-19 years of experience are

awarded the following hourly rates: $300-$375 for 2015-2016, $307-$383 for 2017, and $317-$396 for 2018.[7]

In this case, petitioner's counsel requested an hourly rate of $300 for work performed in 2015 through 2018. Motion for Fees at 1. Petitioner's counsel began practicing law in 2001 and thus, fits squarely in the Fee Schedule range for attorneys with 11 to 19 years of experience throughout the duration of this matter.[8] Additionally, this is Ms. Zhou's first case in the Vaccine Program, so she will be awarded an hourly rate at the low end of the *McCulloch* range. *See Srour v. Sec'y of Health & Human Servs.*, No. 14-283V, 2017 WL 2537373, at *4 (Fed. Cl. Spec. Mstr. May 17, 2017) (awarding hourly rate based in part on "specific experience with the Vaccine Program"); *Dipietro v. Sec'y of Health & Human Servs.*, No. 15-742V, 2016 WL 7384131, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (considering level of experience in the Vaccine Program in determining appropriate hourly rate). Based on petitioner's counsel's fee application, locale, and experience, I find the requested hourly rate for 2015 through 2018 to be reasonable and consistent with the rates contained in the *McCulloch* Fee Schedule. Therefore, Ms. Zhou's hourly rate of $300 will not be reduced.

### 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work

---

[7] The fee schedules are posted on the Court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedules*, https://www.uscfc.uscourts.gov/node/2914 (last visited Feb. 4, 2019).

[8] Ms. Zhou stated in her Motion for Fees that she has been practicing law for 16 years. Motion for Fees at 2. However, Ms. Zhou did not indicate when she was admitted to practice law. According to her website, Ms. Zhou began practicing law in 2001. Profile, *AskLawyerZhou.com*, https://www.asklawyerzhou.com/ (last visited Feb. 4, 2019).

done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Counsel billed 79.8 hours at a rate of $300 per hour, for a total of $23,940.00 in attorneys' fees. Motion for Fees, Ex. A at 13. Based on the above determination that reasonable basis for petitioner's claim lasted the entire duration of this matter, petitioner's counsel's hours will not be reduced due to a reasonable basis issue.

However, upon review of petitioner's Motion for Fees, I noted billing issues concerning counsel billing at her rate for tasks that were paralegal in nature or that were "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521.[9] For example, Ms. Zhou billed for corresponding with providers to request medical records and billing information, redacting medical records for filing in accordance with court rules, and copying medical records onto a CD-rom for delivery to petitioner's expert.[10] These are tasks that must be billed at paralegal rates or not billed at all as they are secretarial. Additionally, on multiple occasions, Ms. Zhou billed her full hourly rates for time spent traveling to visit Mr. Grant at his rehabilitation center.[11] Time for travel should be billed at one-half the attorney's hourly rate and thus, Ms. Zhou should only have billed $150 for time spent traveling. *See Scott*, 2014 WL 2885684, at *3. Therefore, I find that petitioner's requested fee award of $23,940.00 should be reduced by 5%. Petitioner is advised that future billing infractions may result in a higher percentage reduction. Petitioner is hereby awarded **$22,743.00** in attorneys' fees.

### 3. Reasonable Costs

Petitioner requested a total of $4,101.44 in attorneys' costs. *See* Motion for Fees, Ex. E at 2, Ex. H at 1. The requested costs consist of $1,500 in fees to Ron Shatzmiller, M.D. and $2,601.44 in costs associated with the retrieval of medical records, court filing fees, case expenses such as parking and postage, and Dr. Shatzmiller's initial retainer. Motion for Fees at 2. I find petitioner's requested costs to be reasonable and thus award petitioner **$4,101.44** in attorneys' costs.

### 4. Attorneys' Fees and Costs for Estate Administrator

Petitioner also requested $7,530.00 in attorneys' fees charged by David V. Bogdan, Esq. for the administration of Mr. Grant's estate. *See* Motion for Fees at 4, Ex. G. These fees and expenses are not compensable under the Vaccine Act.

---

[9] The following entries are examples and are not exhaustive; they merely provide a sampling.

[10] *See, e.g.*, Motion for Fees, Ex. A at 9 ("prepared request to Inglis House for medical records of Michael Grant pursuant to HIPAA signed by estate administrator"); *id.* at 10 ("receipt, review, scanning and bates stamping Hospital of University of Pennsylvania records"); *id.* at 12 ("copied all relevant medical records onto CD-rom for delivery to Dr. Ron Shatzmiller for review and report").

[11] *See, e.g.,* Motion for Fees, Ex. A at 1 ("attorney round trip to Prospect Park Rehabilitation Center for client meeting"); *id.* at 2 ("attorney round trip travel to Prospect Park Rehabilitation Center for the notarization and execution of client's medical power of attorney").

10

The Vaccine Act limits the amount of "compensation to cover petitioner's . . . costs" to those "incurred in any proceeding on [a Vaccine Act] petition." § 15(e)(1). Such costs often include those that form "'an essential prerequisite condition' to obtaining an award that must 'be fulfilled in order for [the] award to be made.'" *Bennett v. Sec'y of Health & Human Servs.*, No. 15-65V, 2017 WL 3816094, at *3 (Fed. Cl. Spec. Mstr. Aug. 7, 2017) (quoting *Haber ex rel. Haber v. Sec'y of Health & Human Servs.*, No. 09-458V, 2011 WL 839111, at *2 (Fed. Cl. Spec. Mstr. Feb. 14, 2011)). However, "fees and costs concerning the *administration* of [an] estate" are "disallowed because they were not incurred in any proceeding on the petition." *Bennett*, 2017 WL 3816094, at *5 (emphasis added) (quoting *Mol v. Sec'y of Health & Human Servs.*, 50 Fed. Cl. 588, 591 (2001)); *see also Siegfried v. Sec'y of Dep't of Health & Human Servs.*, 19 Cl. Ct. 323, 325 (1990). Morever, attorneys' fees are generally not awarded to petitioners who also happen to be attorneys as there is no "formal, established attorney-client relationship" present warranting an award of fees. *See Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 33157525, at *3 (Fed. Cl. Spec. Mstr. May 31, 2013) (citing *Kooi v. Sec'y of Health & Human Servs.*, No. 05-438V, 2007 WL 5161800, at *4 (Fed. Cl. Spec. Mstr. Nov. 21, 2007)).

This conclusion is bolstered by the practical difficulties that would accompany awarding attorneys' fees for estate administration. Special masters are given discretion to award attorneys' fees precisely because of their "superior understanding of the litigation." *Hall*, 640 F.3d at 1357 (quoting *Hensley*, 461 U.S. at 437); *see also Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 638 (2012) (noting that special masters should "draw upon [their] own experience with the Vaccine Program" in assessing attorneys' fees). Special masters are thus "expected to examine a law firm's time sheets and root out 'hours that are excessive, redundant, or otherwise unnecessary' so that they may be 'excluded from an award.'" *Davis*, 105 Fed. Cl. at 637-38 (quoting *Carrington ex rel. Carrington v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 319, 323 (2008)). Performing this examination on estate attorneys' time sheets, however, would require a nuanced understanding of state probate law to determine the reasonableness of the various tasks that are billed. Such an evaluation by special masters would be especially difficult given that none of the work performed by the estate attorneys is ever "presented to the court at its behest and for its approval." *Thomas v. Sec'y of Health & Human Servs.*, No. 92-46V, 1997 WL 74664, at *3 (Fed. Cl. Spec. Mstr. Feb. 3, 1997).

The Court of Federal Claims has previously "addressed the question of whether fees attributable to probate matters are compensable under [§ 15(e)(1)] and has answered the question in the negative" each time. *Mol*, 50 Fed. Cl. at 591; *see Lemon v. Sec'y of Health & Human Servs.*, 19 Cl. Ct. 621, 623 (1990) (holding that "fees and expenses concerning the administration of [an] estate" are "disallowed because they were not incurred in any proceeding on the petition"); *Siegfried*, 19 Cl. Ct. at 325 (holding that the Vaccine Act "does not provide attorney fee awards to cover the myriad legal implications of establishing or administering an estate").

In this case, the requested $7,530 in attorneys' fees and expenses that were billed by Mr. Bogdan for estate administration are not compensable under the Act. *See* Motion for Fees, Ex. G. According to Mr. Bogdan's billing records, Mr. Bogdan was not appointed representative of the estate for purposes of filing the petition; he apparently was the administrator pursuant to Mr. Grant's will. *See id.* at 2. Mr. Bogdan's billing records began on August 17, 2016, approximately

11

four months after Mr. Grant died. *Id.* The first several entries in Mr. Bogdan's billing records pertain to estate administration fees,[12] including hours billed for the preparation and review of a renunciation on behalf of Mr. Grant's son, travel to file a Petition for Citation with the Philadelphia Register of Wills, and correspondence with the Register of Wills for a hearing date. *See* Motion for Fees, Ex. G at 2. Such administration fees involve "a wide variety of probate matters" in collateral state court proceedings and were "unrelated to the vaccine petition" itself and accordingly not compensable. *Haber*, 2011 WL 839111, at *2.

Once Mr. Grant's petition was filed, Mr. Bogdan continued as the representative of Mr. Grant's estate in all of Mr. Grant's legal matters. *See* Motion for Fees, Ex. G at 2-4. However, services rendered by Mr. Bogdan regarding Mr. Grant's estate administration had nothing to do with the legal proceedings in this Court; the hours he billed for the vaccine claim related to Mr. Bogdan "standing in the shoes" of the decedent, Mr. Grant, as the petitioner. Petitioners are not compensated for their time in vaccine cases, even if they are attorneys, as an attorney-petitioner has no "formal, established attorney-client relationship" warranting an award of attorneys' fees. *Underwood*, 2013 WL 33157525, at *3. Accordingly, Mr. Bogdan will not be compensated for the hours he billed as petitioner in the vaccine claim. Moreover, as noted above, Mr. Bogdan will also not be compensated under the Vaccine Act for general estate administration matters as these are matters unrelated to the vaccine petition. *See Haber*, 2011 WL 839111, at *2. Therefore, the entirety of Mr. Bogdan's requested fees and costs is not compensable under the Act.

In sum, while "costs incurred in any proceeding on [a Vaccine Act] petition," § 15(e)(1) are compensable, attorneys' fees incurred for estate administration in collateral state court proceedings are not, particularly when they have nothing to do with the vaccine petition. Moreover, an estate administrator will not be compensated for hours billed while "standing in the shoes" of a petitioner as he or she is not performing legal work. Therefore, the fees and costs associated with Mr. Bogdan's administration of Mr. Grant's estate for purposes of this matter are not compensable and Mr. Bogdan's request for fees and costs is **denied**.

## IV. Total Award Summary

Based on the foregoing, I hereby **award petitioner $26,847.44**,[13] representing reimbursement for attorneys' fees in the amount of $22,743.00 and costs in the amount of $4,104.44, in the form of a check made payable **jointly to petitioner and petitioner's counsel, Ying Zhou, Esq.** The Clerk of the Court is directed to enter judgment in accordance with this Decision.[14]

---

[12] The following entries are examples and are not exhaustive; they merely provide a sampling.

[13] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master